Filed 5/25/23  P. v. Gutierrez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOSE LUIS GUTIERREZ, <br><br> Defendant and Appellant. | B324412 <br><br> (Los Angeles County <br> Super. Ct. No. PA073896) |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael Terrell, Judge.  Affirmed.

Law Offices of Shan D. Potts and Shan D. Potts for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Jose Luis Gutierrez appeals from the denial of his motion to vacate pursuant to Penal Code section 1473.7.  We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Defendant was charged with two counts of making criminal threats (Pen. Code, § 422, subd. (a); counts 1 & 2) and one count of stalking (§ 646.9, subd. (a); count 3) arising from an incident on June 25, 2012, where he repeatedly yelled at and threatened harm to his girlfriend, Guadalupe R.  Defendant's girlfriend was the victim in counts 1 and 3.  John G., the husband of one of Guadalupe's friends, was the victim in count 2.  John and his wife were allowing Guadalupe to stay with them when defendant came to their home, pounded on the door and threatened to kill John.

In September 2012, defendant pled no contest to one count of making criminal threats.  In accordance with the terms of the plea agreement, the court imposed a three-year prison sentence, suspended execution of sentence and placed defendant on five years formal probation.  One of the probation terms was that defendant would be released from custody to a six-month residential substance abuse treatment facility.  The remaining two felony counts were dismissed.

During the plea colloquy, the court did not discuss the immigration consequences with defendant.  The court asked defendant if he read the felony advisement of rights, waiver, and plea form, if he discussed the form with his attorney, and if he initialed and signed the form himself.  Defendant answered yes to all of those questions.  The court then asked defendant if he had any questions for the court, and defendant said no.

2

The felony advisement of rights, waiver, and plea form signed by defendant contains a heading titled "**CONSEQUENCES OF MY PLEA**."  Paragraph 12 under that heading is titled "**Immigration Consequences**" and states: "I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty."  The box next to paragraph 12 was initialed by defendant.

Defendant completed probation and, in 2017, obtained an order from the court, pursuant to Penal Code section 17, subdivision (b) and section 1203.4, reducing his conviction to a misdemeanor and dismissing the case.

In December 2021, defendant filed a motion to vacate his conviction pursuant to Penal Code section 1473.7.  Defendant argued he was not told and did not understand that his conviction would prevent him from renewing his legal permanent resident status and becoming a naturalized citizen.  Defendant said the mandatory nature of the immigration consequences was not explained to him.

In support of his motion, defendant submitted a declaration in which he explained that in 1984, when he was just 14 years old, his parents brought him to live in the United States and he has lived here ever since.  He obtained a permanent legal residency card in 1998.  Defendant said he hoped he would never have "to return to the poverty and violence in Mexico."  Defendant said that when he accepted the plea, no alternative dispositions were explained to him, nor was the fact that the immigration consequences were mandatory.  He said he understood only that he would not be allowed to re-enter the

3

United States but since he had no plans to leave, he accepted that consequence.  Defendant said he would have been willing to go to trial or to accept additional punishment, including additional time in custody, to avoid deportation and being sent away permanently from his family.  Finally, defendant's declaration included a hearsay statement from his former attorney, Mr. Duggan, who, according to defendant, said he would submit a declaration stating he had not explained the mandatory nature of the immigration consequences.  However, defendant stated that despite repeated additional attempts to contact Mr. Duggan, defendant and his current counsel were unable to reach him to obtain the declaration.  Despite that, defendant attached an unsigned "declaration" of Mr. Duggan in support of his motion.

Defendant also submitted several exhibits, including the transcript of the plea colloquy in September 2012, the 2017 order dismissing defendant's conviction, correspondence attempting to reach Mr. Duggan, and a copy of his permanent legal residency card showing his legal resident status at the time of the plea.  The correspondence to Mr. Duggan attached as an exhibit included the draft declaration forwarded for him to sign which was never signed and returned.

The District Attorney's Office opposed defendant's motion, arguing that he received proper advisement of the mandatory nature of the immigration consequences of his plea in the waiver form he signed and acknowledged during the plea colloquy.

The court denied defendant's motion on the ground he failed to show prejudice.  This appeal followed.

## DISCUSSION

Defendant contends the trial court erred in finding he failed to show prejudice.  Our review of the court's denial is de

4

novo.  (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).)
We exercise our " ' "independent judgment to determine whether
the facts satisfy the rule of law." ' " (*Id*. at pp. 319–320.)  Where,
as here, there was no evidentiary hearing, " 'it is for the appellate
court to decide, based on its independent judgment, whether the
facts establish prejudice under [Penal Code] section 1473.7.' "
(*Id*. at p. 320.)

The Supreme Court recently reaffirmed what a defendant
must show in moving to vacate a conviction under Penal Code
section 1473.7.  "To prevail under section 1473.7, a defendant
must demonstrate that his conviction is 'legally invalid due to
prejudicial error damaging [his or her] ability to meaningfully
understand, defend against, or knowingly accept the actual or
potential adverse immigration consequences of a conviction or
sentence.' (§ 1473.7, subd. (a)(1).)  The defendant must first show
that he did not meaningfully understand the immigration
consequences of his plea.  Next, the defendant must show that his
misunderstanding constituted prejudicial error.  '[P]rejudic[i]al
error . . . means demonstrating a reasonable probability that the
defendant would have rejected the plea if the defendant had
correctly understood its actual or potential immigration
consequences.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)

1.    **Defendant Did Not Show He Lacked a Meaningful
      Understanding of the Immigration Consequences of
      His Plea.**

Defendant says he did not fully understand the mandatory
nature of the consequences he would face.  However, the plea
form defendant signed used mandatory language:  "I understand
that if I am not a citizen of the United States, *I must expect* my
plea of guilty or no contest *will result* in my deportation,

5

exclusion from admission or reentry to the United States, and denial of naturalization and amnesty." (Italics added.) Defendant initialed this paragraph and signed the form.

In response to questions from the judge who took his plea in 2012, defendant said he had read and discussed the plea form with his privately retained attorney, and he said he did not have any questions to ask the court. Nothing in the record indicates defendant did not read or understand English or that he had any difficulties communicating with his attorney. Defendant did not use an interpreter. Nor does defendant's declaration state any facts about his conversation with his attorney that would undermine his affirmative statements to the court in 2012 that he and his attorney had in fact discussed the form.

This case is unlike *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 906 (*Manzanilla*), where the defendant declared that "when counsel went over the plea waiver form with him in 2014, he 'was having a really hard time seeing because of my cataracts. I was taking a long time to read everything . . . she was standing over me and asking me to hurry up. She said it covered everything we had already talked about. I initialed and she walked away with the form.'" (*Id*. at p. 901.) Manzanilla also presented copies of the contemporaneous notes made by his attorney of her meeting with him which showed that she told him he would lose his permanent resident status, and that he would have a hearing before an immigration court—but not that he was subject to mandatory deportation. (*Id*. at p. 907.) And, less than a month after entering the plea, Manzanilla sent a letter to the court seeking to revoke the plea because he had not understood the immigration consequences. (*Id*. at pp. 899–900.)

6

## 2. Defendant Did Not Show Prejudicial Error.

*Espinoza* instructs that " '[t]o determine whether there is a reasonable probability a defendant would have rejected a plea offer if he had understood its immigration consequences, courts must 'consider the totality of the circumstances,' " and that factors " 'relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' " (*Espinoza, supra*, 14 Cal.5th at p. 320.)

Defendant has lived in the United States since 1984. But he offered no other evidence about his ties to the United States, except a bare reference to having family here in 2012 and that he is his "family's financial and emotional support." He recited no facts about his particular circumstances to explain the importance to him of avoiding deportation, except to say he did not want to return to the poverty and violence in Mexico.

There is nothing in the record to support a finding that defendant had any reason to expect or hope that an alternative plea deal without immigration consequences could have been obtained. Defendant was facing three felony charges involving two separate victims and received a favorable disposition in which the court imposed but suspended a three-year high term sentence, granted probation and dismissed the remaining two counts. Defendant did not serve any additional time in custody and was released to a residential substance abuse treatment program. Defendant points to no facts that would support a reasonable inference he could have negotiated an immigration-neutral disposition.

The lack of prejudice also distinguishes this case from *Manzanilla*. The defendant in *Manzanilla* may have been able to negotiate a plea agreement with no negative immigration consequences. The prosecution offered a disposition that required defendant to serve 365 days in jail. His attorney failed to even ask for a one-day reduction to 364 days which would have eliminated his conviction qualifying as an aggravated felony and would have made him eligible for discretionary relief from deportation. (*Manzanilla, supra,* 80 Cal.App.5th at pp. 904, 908–909.)

## DISPOSITION

The order denying Jose Luis Gutierrez's motion to vacate is affirmed.

GRIMES, Acting P. J.

WE CONCUR:

WILEY, J.

VIRAMONTES, J.

8